Edward A. Steinberg, Esq.
LEAV & STEINBERG, LLP
75 Broad Street, Suite 1601
New York, New York 10004
Tel. No.: (212) 766-5222
Fax No.: (212) 693-2377
Email: eas@lstriallaw.com

*Attorneys for Plaintiff-* SONJI M. ASTORGA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
SONJI M. ASTORGA,

                    Plaintiff,

     -against-

ALLSTATE OIL RECOVERY, CO. and
RICHARD J. WOODHAM,

                    Defendants.
-------------------------------------------------------------------------X

DOCKET No.: 16-cv-5068

**DECLARATION IN SUPPORT OF PLAINTIFF'S PARTIAL SUMMARY JUDGMENT MOTION AGAINST DEFENDANTS**

STATE OF NEW YORK    )
                              )SS
COUNTY OF NEW YORK  )

I, Edward A. Steinberg, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following under the penalties of perjury:

1.     I am the attorney for the plaintiff SONJI M. ASTORGA ("ASTORGA" and/or "Plaintiff) and as such am fully familiar with the facts and circumstances of this action.

2.     I submit this affirmation in support of Plaintiff's motion for partial summary judgment against the defendants ALLSTATE OIL RECOVERY, CO. and RICHARD J. WOODHAM on the issue of liability.

3.  This is an action to recover for serious and severe personal injuries sustained by Plaintiff in an automobile accident that occurred at the intersection of Route 303 and East Erie Street in Orangetown, New York, on Monday, August 24, 2015, at approximately 1:00pm.

4.  ASTORGA was the lawful operator of her vehicle when it was involved in an accident with a second vehicle owned by ALLSTATE OIL RECOVERY, CO. and operated by RICHARD J. WOODHAM ("WOODHAM") in the scope of his employment with ALLSTATE OIL RECOVERY CO.. At the time of the accident, the front of defendants' truck struck and hit the rear portion of Plaintiff's vehicle, resulting in a heavy impact with the center portion of her vehicle crushed.

5.  Customarily, Route 303, at or near its intersection with East Erie Street, is a two-way roadway with two vehicular lanes for traffic in each direction. Route 303 runs north to south. In August 2015, the center median/divider of Route 303 was undergoing repairs/modifications. During the construction work, there were various signs and/or orange cones placed on the roadway that closed the left lane of northbound Route 303. At the time of the accident, there was only one lane in the northbound direction on Route 303 that was open to vehicular traffic. There was no separate lane to the far right marked for parked vehicles. There was a standard traffic light governing northbound traffic as it approached East Erie Street. There is no indication from any of the facts that either the traffic light or vehicles stopped at the light were obstructed from view of other approaching vehicles in any way.

6.  As a result of the automobile accident, ASTORGA, presently forty-seven (47) years old, sustained a left central disc herniation and annular fissure which impinges the left paramedian cord at C5-C6 disc level; cervical radiculopathy; cervical disc displacement and cervical spondylosis—all of which necessitated ASTORGA to undergo an anterior cervical

discectomy at C5-C6 on May 12, 2016 under the care of Dr. Brisson. Notwithstanding the discectomy, ASTORGA continued to experience pain to the cervical spine, and most recently, after undergoing a repeat MRI, was diagnosed with herniations at C3-C4 and C5-C6 disc levels resulting in spinal cord compression. ASTORGA has been recommended to undergo reconstructive cervical spine surgery/anterior cervical discectomy and fusion at C3-C4 disc level and possibly at C5-C6 disc level. In addition, ASTORGA also sustained a disc bulge at L4-L5 disc level, L4-L5 and L5-S1 facet arthropathy, lumbosacral spondyloses and internal derangement of the left shoulder. *See*, **Exhibit C**

7. The action was timely commenced by the filing of a verified complaint with the Court on June 28, 2016. *See*, **Exhibit A**. Defendants were joined by way of a verified answer issued on or about September 15, 2016. *See*, **Exhibit B**.

8. Defendants admitted the following in their verified answer: (a) WOODHAM was an employee of ALLSTATE OIL RECOVERY CO. (¶13 Answer); (b) ALLSTATE OIL RECOVERY CO. was the registered owner and titled owner of a certain motor vehicle bearing New Jersey license plate number AM384H. (¶¶16, 17 Answer); (c) WOODHAM was in physical control and the operator of a certain motor vehicle bearing New Jersey license plate number AM384H. (¶22 Answer) and (d) WOODHAM was operating a certain motor vehicle bearing New Jersey plate number AM384H with the express knowledge, consent and/or on the business of its owner. (¶23 Answer). See, **Exhibit B**.

### ASTORGA'S VEHICLE WAS REAR-ENDED BY DEFENDANTS' TRUCK

9. The negligence of defendants ALLSTATE OIL RECOVERY CO. and WOODHAM is undisputed as ASTORGA's vehicle was rear-ended by defendants' truck while at a stop on the roadway at a red traffic light.

10. ASTORGA testified at her examination before trial held on June 21, 2017, *See* **Exhibit D**: The accident took place on Route 303 (Astorga, e.b.t. transcript, pg. 24, ln. 10) at or near its intersection with Eerie Street (Astorga, e.b.t. transcript, pg. 27, lns. 14-15) in Orangetown or Blauvelt (Astorga, e.b.t. transcript, pg. 24, ln. 13) in the State of New York (Astorga, e.b.t. transcript, pg. 24, ln. 16).

11. The weather conditions were "sunny, clear, fine", it was a "pretty nice day." (Astorga, e.b.t. transcript, pg. 29, lns. 17-18)

12. Typically, there were two lanes for vehicular traffic in each direction on Route 303 at or near the area of the accident (Astorga, e.b.t. transcript, pg. 25, lns. 21-24). However, same was not the case on August 24, 2015. ASTORGA said: "At the time, they were building a median, there was construction. So they were building like a planter, a cement strip, I guess." (Astorga, e.b.t. transcript, pg. 26, lns. 4-7).

13. ASTORGA was traveling northbound on Route 303 (Astorga, e.b.t. transcript, pg. 24, ln. 23) in the minutes before the accident.

14. She was unsure of which lane her vehicle was in on Route 303, but stated "there was only one lane open, so I was in the open lane" because of the ongoing construction to the median (Astorga, e.b.t. transcript, pg. 27, lns. 2-5).

15. ASTORGA's vehicle was stopped on Route 303 at the intersection because of a red traffic light at the intersection ahead (Astorga, e.b.t. transcript, pg. 27, ln. 11). There were no other vehicles in front of her on the roadway (Astorga, e.b.t. transcript, pg. 27, ln. 25). She was the first car at the traffic light at the intersection (Astorga, e.b.t. transcript, pg. 28, ln. 4).

16. ASTORGA's vehicle was at a complete stop at the red traffic light for approximately ten (10) seconds before the collision (Astorga, e.b.t. transcript, pg. 27, ln. 18).

17. At the time she was struck in the rear, her vehicle was at a complete stop on the roadway (Astorga, e.b.t. transcript, pg. 26, ln. 24).

18. Her vehicle was struck in the rear by defendants' truck (Astorga, e.b.t. transcript, pg. 26, ln. 16; pg. 33, ln. 11). ASTORGA said: "It was a big truck, it wasn't a small Ford like you said." (Astorga, e.b.t. transcript, pg. 33, lns. 21-22)

19. The front bumper of the defendants' truck struck the rear bumper of her vehicle (Astorga, e.b.t. transcript, pg. 26, ln. 21).

20. ASTORGA exited the vehicle at some point after the accident to speak to WOODHAM (Astorga, e.b.t. transcript, pg. 31, ln. 14). She said: "I asked the driver what happened, and he said by the time he looked up and saw me he couldn't stop and he apologized." (Astorga, e.b.t. transcript, pg. 32, lns. 2-4) Again, Astorga said as she recounted her conversation with WOODHAM, "By the time I looked up and saw you, it was too late to stop. I am sorry." (Astorga, e.b.t. transcript, pg. 33, lns. 3-6)

21. Plaintiff's vehicle was towed from the scene after the accident (Astorga, e.b.t. transcript, pg. 34, ln. 3) and sustained approximately eleven thousand ($11,000) dollars in property damage (Astorga, e.b.t. transcript, pg. 34, ln. 17).

22. Plaintiff was shown a photograph depicting defendants' truck (marked as Exhibit A and Exhibit B at her deposition on June 21, 2017, *See*, **Exhibit G**) and she identified it as "the truck that hit" her vehicle (Astorga, e.b.t. transcript, pg. 63, ln. 19). The truck's front bumper had fallen off after the crash with her vehicle and was on the roadway near the intersection of the accident (Astorga, e.b.t. transcript, pg. 64, lns. 12-21)

23. Plaintiff was shown the police accident report (marked as Exhibit D at her deposition on June 21, 2017, *See*, **Exhibit F**) and after reviewing same, stated the information

contained therein was accurate (Astorga, e.b.t. transcript, pg. 65, lns. 7-9; pg. 67, ln. 9). ASTORGA told the responding police officers that "I was stopped at a red light and then I was hit by the car—by the truck." (Astorga, e.b.t. transcript, pg. 66, ln. 25; pg. 67, lns. 2-3)

24.  WOODHAM cannot provide a non-negligent excuse for rear-ending ASTORGA's vehicle.

25.  WOODHAM testified at his examination before trial held on July 10, 2017, *See*, **Exhibit E**: He was employed as a truck driver with ALLSTATE OIL RECOVERY COMPANY and was operating a "roll-off dumpster truck" on August 24, 2015 (Woodham, e.b.t. transcript, pg. 9, lns. 12-21). He described the truck as a "Peterbilt roll-off"—a four-axle truck with twelve wheels (Woodham, e.b.t. transcript, pg. 15, lns. 17-25; pg. 16, ln. 2).

26.  The truck had a "container on the back" because he was hauling "commercial garbage" at the time of the accident (Woodham, e.b.t. transcript, pg. 16, lns. 16-25). The dimensions of the container were "from the deck of the truck to the top of the container, about eight feet" (Woodham, e.b.t. transcript, pg. 19, lns. 20-21) and twenty feet long (Woodham, e.b.t. transcript, pg, 20, ln. 5). The truck, without the container, weighed about 28,000 pounds (Woodham, e.b.t. transcript, pg. 19, lns. 3-4). The container, filled with garbage, weight about 8,000 pounds (Woodham, e.b.t. transcript, pg. 19, ln. 15).

27.  Both the truck and the container were owned by ALLSTATE OIL RECOVERY COMPANY (Woodham, e.b.t. transcript, pg. 17, lns. 4-9). WOODHAM was operating the truck in the course of his employment with ALLSTATE OIL RECOVERY COMPANY (Woodham, e.b.t. transcript, pg. 12, ln. 17; pg. 13, ln. 16).

28.  The truck did not have any mechanical issues or problems of any sort at the time of the accident (Woodham, e.b.t. transcript, pg. 18, ln. 17) He was unaware of any repairs the

truck had undergone in the six months prior to the accident (Woodham, e.b.t. transcript, pg. 18, ln. 23).

29.     WOODHAM did not remember any of the picked-up and/or dropped-off locations he visited on the date of the accident, prior to the collision (Woodham, e.b.t. transcript, pg. 24, lns. 4-5). He said: "I do not recall my exact stops of that day." (Woodham, e.b.t. transcript, pg. 24, lns. 4-5). He recalled generally making two stops on August 24, 2015 before the crash (Woodham, e.b.t. transcript, pg. 24, ln. 18).

30.     He was "going to [a] transfer station in West Nyack to empty the container" had the accident not happened (Woodham, e.b.t. transcript, pg. 25, lns. 3-4; pg. 26, ln. 25; pg. 27, ln. 2). WOODHAM was only one (1) mile away from the transfer station in West Nyack at the time of the crash (Woodham, e.b.t. transcript, pg. 27, lns. 7-11; pg. 46, ln. 19). The transfer station was to his left, so on the opposite side of the roadway from where he was traveling on Route 303 (Woodham, e.b.t. transcript, pg. 46, lns. 22-25).

31.     The collision took place on Route 303 at or near its intersection with East Erie Street (Woodham, e.b.t. transcript, pg. 27, lns. 16-24; pg. 28, ln. 3) in Orangetown in the State of New York (Woodham, e.b.t. transcript, pg. 15, lns. 6-10).

32.     The weather conditions were "fair, partly sunny" at the time of the accident (Woodham, e.b.t. transcript, pg. 14, ln. 20). The roadways at the area of the accident were dry, there was no precipitation or rain at the time of the accident (Woodham, e.b.t. transcript, pg. 14, lns. 20-25).

33.     WOODHAM described Route 303 as a two-way roadway (Woodham, e.b.t. transcript, pg. 28, ln. 20). Normally there would be two vehicular traffic lanes in each direction

on Route 303; however, at the time of the accident "it was reduced down to one". (Woodham, e.b.t. transcript, pg. 29, lns. 3-4).

34. There was only one lane open in the northbound direction of Route 303 due to "road construction…just prior to East Erie Street." (Woodham, e.b.t. transcript, pg. 29, lns. 7-11). The lane that was open at the time of the accident was the right lane. He said: "I believe it was the left lane that was closed down." (Woodham, e.b.t. transcript, pg. 34, lns. 10-11)

35. The construction work was connected to the "rebuilding the median in the middle of the street." (Woodham, e.b.t. transcript, pg. 29, lns. 15-16). There was "actually work being performed" (Woodham, e.b.t. transcript, pg. 30, lns. 13-20) to the median as WOODHAM approached the intersection of Route 303 and East Erie Street.

36. There was no separate lane to the far right of northbound Route 303 for parked vehicles (Woodham, e.b.t. transcript, pg. 38, ln. 4).

37. WOODHAM was operating his truck northbound on Route 303 (Woodham, e.b.t. transcript, pg. 24, ln. 24) in the minutes before the accident.

38. When WOODHAM first entered Route 303, there were two lanes for moving vehicles traveling in the northbound direction—which continued for about one to two miles (Woodham, e.b.t. transcript, pg. 32, lns. 11-18). After the one to two miles, the roadway narrowed to only one lane for moving vehicles traveling in the northbound direction (Woodham, e.b.t. transcript, pg. 32, ln. 22). There were construction signs indicating lane closures (Woodham, e.b.t. transcript, pg. 33, lns. 3-4) ahead on Route 303.

39. At some point, WOODHAM merged from the left lane into the right lane as he continued northbound on Route 303 after seeing the lane closure signs on that roadway (Woodham, e.b.t. transcript, pg. 34, ln. 16).

40. Notwithstanding the fact that there was active construction ongoing at the median and with the lane closure, WOODHAM admitted he was operating his truck, with a full-load garbage container, at about 30 to 35 miles per hour prior to the accident (Woodham, e.b.t. transcript, pg. 33, lns 14). He stated the speed limit on Route 303 at or near its intersection with East Erie Street was 35 miles per hour (Woodham, e.b.t. transcript, pg. 33, ln. 18).

41. WOODHAM knew there was a traffic light governing northbound traffic on Route 303 at or near its intersection with East Erie Street (Woodham, e.b.t. transcript, pg. 34, ln. 22). This was the first traffic light he faced after he merged into the right lane after passing the lane closure signs on Route 303 (Woodham, e.b.t. transcript, pg. 35, ln. 15).

42. WOODHAM first saw the traffic light "when [he] was approaching it (Woodham, e.b.t. transcript, pg. 35, ln. 18) at about a "quarter mile" away from the traffic light (Woodham, e.b.t. transcript, pg. 35, ln. 21). He first saw the light after he merged into the right lane after passing the lane closure signs on Route 303 (Woodham, e.b.t. transcript, pg. 35, ln. 25).

43. WOODHAM could not recall how long he was traveling in the right lane after he merged up until the time of the accident (Woodham, e.b.t. transcript, pg. 36, ln. 5)

44. When WOODHAM observed the traffic light for the first time, at a quarter mile away from the intersection of East Erie Street, the traffic light was green (Woodham, e.b.t. transcript, pg. 36, ln. 9; pg. 36, ln. 24). He was operating his truck at about 15 to 20 miles per hour as he approached the traffic light (Woodham, e.b.t. transcript, pg. 36, ln. 13).

45. WODOHAM admitted there was "heavy traffic" conditions on the roadway when he first observed the traffic light at a quarter mile away from the intersection of East Erie Street (Woodham, e.b.t. transcript, pg. 36, ln. 16). WOODHAM's attorney questioned him again on

this point, asking him, "Heavy traffic conditions", at which point again WOODHAM stated "Yes." (Woodham, e.b.t. transcript, pg. 36, lns. 17-19).

46. Around this time is when WOODHAM first took notice of ASTORGA's vehicle that was traveling in front of him. He saw ASTORGA's vehicle, a "four-door sedan", traveling in front of his truck about a quarter mile away from the intersection of East Erie Street (Woodham, e.b.t. transcript, pg. 37, ln. 8).

47. WOODHAM saw the traffic light begin to change to "yellow to red" as he continued to travel on northbound Route 303 (Woodham, e.b.t. transcript, pg. 38, ln. 11). His truck was about a "thousand feet" from the intersection when he observed the traffic light change to a steady red light (Woodham, e.b.t. transcript, pg. 38, lns. 20-21). WOODHAM "believed" he brought his vehicle to a stop after seeing the red traffic light (Woodham, e.b.t. transcript, pg. 38, ln. 25). He estimated his vehicle was stopped for about a "minute or two" at the traffic light (Woodham, e.b.t. transcript, pg. 39, ln. 4). He saw about ten to twelve vehicles also at a complete stop ahead of him at the red traffic light on northbound Route 303 (Woodham, e.b.t. transcript, pg. 39, lns. 8-11).

48. At some point, the traffic light changed to green and WOODHAM began to accelerate his truck (Woodham, e.b.t. transcript, pg. 39, lns. 14-17).

49. WOODHAM accelerated his vehicle "about [a] thousand feet to the intersection" (Woodham, e.b.t. transcript, pg. 39, lns. 20-21) when the traffic light again changed to "yellow to red" at the intersection of Route 303 and East Erie Street before the accident (Woodham, e.b.t. transcript, pg. 39, ln. 25; pg. 40, ln. 8).

50. WOODHAM's truck was about a "hundred feet" from the intersection when he saw the traffic light turn to a steady red the second time (Woodham, e.b.t. transcript, pg. 40, ln. 13).

51. WOODHAM confirmed he "knew [ASTORGA's vehicle] was in front of [him] on Route 303 before the collision (Woodham, e.b.t. transcript, pg. 42, ln. 4). He conceded ASTORGA's vehicle was directly in front of his truck before the collision (Woodham, e.b.t. transcript, pg. 42, ln. 7; pg. 56, ln. 7). ASTORGA's vehicle was traveling completely within the travel lane in front of his truck before the collision (Woodham, e.b.t. transcript, pg. 42, ln. 21; pg. 56, ln. 11)

52. He estimated the accident between the two vehicles took place "a couple of feet" away from the construction work at the median (Woodham, e.b.t. transcript, pg. 56, lns. 18-19). He stated the construction was "parallel with where [WOODHAM] was and behind" the area of the accident (Woodham, e.b.t. transcript, pg. 56, lns. 24-25).

53. When questioned as to whether ASTORGA's vehicle was at a complete stop before the collision, he said: "I don't recall if she was completely stopped at the time of impact." (Woodham, e.b.t. transcript, pg. 43, lns. 3-4) Again he said: "I do not recall if she was at a complete stop a hundred percent or not." (Woodham, e.b.t. transcript, pg. 44, lns. 15-16)

54. The front of WOODHAM's truck was about 10 to 20 feet behind the rear of ASTORGA's vehicle at the time he first observed her vehicle before the accident (Woodham, e.b.t. transcript, pg. 44, ln. 21). WOODHAM confirms the impact between the two vehicles occurred about 20 feet from the intersection of Route 303 and East Erie Street (Woodham, e.b.t. transcript, pg. 55, ln. 24)

55. WOODHAM did not honk his horn at any time prior to the collision (Woodham, e.b.t. transcript, pg. 45, ln. 5).

56. WOODHAM did not swerve his vehicle to the right of left at any time prior to the collision (Woodham, e.b.t. transcript, pg. 45, ln. 8).

57. WOODHAM states he was traveling at "less than five miles an hour because [he] was prepared to stop for the changing light." (Woodham, e.b.t. transcript, pg. 43, lns. 7-9). WOODHAM admits he was moving at the time of the impact, and was still moving while approaching a steady red traffic light.

58. At no time from the moment he attempted to stop his truck at the red traffic light, did the traffic light change again to green before the collision (Woodham, e.b.t. transcript, pg. 40, ln. 16) WOODHAM said: "At the time of the impact, [the traffic light] would have been going from yellow to red." (Woodham, e.b.t. transcript, pg. 55, lns. 18-19)

59. WOODHAM applied his brakes before striking the rear of ASTORGA's vehicle (Woodham, e.b.t. transcript, pg. 43, ln. 19). He said: "I applied normal force, and when I realized she was stopping, I applied extra force to avoid contact." (Woodham, e.b.t. transcript, pg. 43, lns. 22-24)

60. WOODHAM was in the process of slowing down before striking ASTORGA's vehicle in the rear (Woodham, e.b.t. transcript, pg. 45, ln. 13). Although he could not recall precisely when he started to slow the truck down, he explained there was a "stop-and-go traffic situation" on the roadway (Woodham, e.b.t. transcript, pg. 45, lns. 16-17).

61. Immediately before the crash, WOODHAM was looking at ASTORGA's bumper (Woodham, e.b.t. transcript, pg. 45, ln. 24).

62.     WOODHAM observed ASTORGA activate her brake lights before the accident (Woodham, e.b.t. transcript, pg. 46, ln. 4).  He believed ASTORGA's brake lights were activated at the time he struck her vehicle in the rear (Woodham, e.b.t. transcript, pg. 46, ln. 7).

63.     At no time, throughout the entirety of WOODHAM's testimony, did he ever state that ASTORGA brought her vehicle to a "sudden stop", "abrupt stop" or "unexpected stop" at the intersection.  WOODHAM can never make such a claim, since WOODHAM admitted to seeing the red traffic light ahead, and should have been slowing and/or stopping his truck at seeing the traffic light.  WOODHAM also admitted to seeing ASTORGA's rear brake lights activated, which means ASTORGA was slowing and/or stopped ahead of him at the same red traffic light.  Another sign that WOODHAM should have been slowing and/or stopping his truck at seeing ASTORGA's rear brake lights activated.

64.     As a result of the impact, WOODHAM believed ASTORGA's vehicle "rolled forward" some distance on the roadway (Woodham, e.b.t. transcript, pg. 47, ln. 12).

65.     The front bumper of defendants' truck struck the rear of ASTORGA's vehicle (Woodham, e.b.t. transcript, pg. 44, lns. 4-10).  The truck struck "straight on center" of ASTORGA's vehicle (Woodham, e.b.t. transcript, pg. 44, ln. 7)

66.     WOODHAM described the impact between his truck and ASTORGA's vehicle as "light to medium." (Woodham, e.b.t. transcript, pg. 45, ln. 21).

67.     When WOODHAM exited his vehicle, he observed damage to the vehicles at the scene (Woodham, e.b.t. transcript, pg. 47, ln. 22).

68.     He saw that the front bumper was "hanging off" the truck (Woodham, e.b.t. transcript, pg. 47, lns. 24-25).

69. He also saw "the back bumper and trunk area [of ASTORGA's vehicle] was impacted and pushed in" as a result of the accident (Woodham, e.b.t. transcript, pg. 48, lns. 6-7).

70. WOODHAM had the radio on inside his truck at the time of the accident (Woodham, e.b.t. transcript, pg. 50, ln. 7).

71. WOODHAM believed the construction workers called the police to the scene of the accident (Woodham, e.b.t. transcript, pg. 50, lns. 20-21).

72. He recalled having a conversation with the responding police officers as follows: "I told them that I was driving down slow, stopped for the intersection and the vehicle in front of me also stopped, and I didn't have enough time to stop before the impact." (Woodham, e.b.t. transcript, pg. 52, lns. 5-8).

73. After the accident, WOODHAM continued to his intended destination at the transfer station, "finished what [he] had to do", "returned the container back to Clarins" and then finally returned the truck to the "shop" where he notified his employer of the accident (Woodham, e.b.t. transcript, pg. 54, lns. 11-24).

74. He reported the accident to his employer as follows: "I told him I was proceeding to the transfer station up through the intersection. The light was changing. I went to stop, and I impacted the vehicle in front of me." (Woodham, e.b.t. transcript, pg. 55, lns. 5-9) He recounted to his employer, the traffic light was changing from yellow to red at the time of the accident (Woodham, e.b.t. transcript, pg. 55, ln. 13)

75. WOODHAM admitted to taking several photographs of the vehicles with his cellular phone (Woodham, e.b.t. transcript, pg. 57, lns. 11-18). He recognized what was depicted in the photograph (marked Exhibit A, 7-10-2017) as "the front bumper of the vehicle that [he] was driving." (Woodham, e.b.t. transcript, pg. 58, lns. 12-13) WOODHAM said that the truck's

"bumper had to be removed" and "was laying underneath the vehicle" in the photograph (Woodham, e.b.t. transcript, pg. 58, lns. 18-20) He affirmed both photographs (marked as Exhibit A, Exhibit B, 7-10-2017) fairly and accurately depict the damage to the truck after the collision (Woodham, e.b.t. transcript, pg. 59, lns. 18-24). He also recognized photograph (marked Exhibit C, 7-10-2017) as depicting the rear end damage to ASTORGA's vehicle (Woodham, e.b.t. transcript, pg. 60, lns. 13-17). *See*, **Exhibit G**.

76. The above testimony and facts warrant a grant of summary judgment against defendants on the issue of liability. Defendants have not only failed to proffer a non-negligent explanation for the collision, but defendants' testimony supports a finding of summary judgment in favor of Plaintiff.

## CERTIFIED POLICE ACCIDENT REPORT

77. Annexed hereto as **Exhibit F**, is a copy of the certified police accident report as it was prepared by the responding police officers immediately at the scene of the accident with respect to the collision. The accident description notes: "Op. 1 [ASTORGA] states she was stopped at a red traffic light on Route 303 when she was rear ended by vehicle 2. Op. 2 [WOODHAM] states that vehicle 1 stopped suddenly as the traffic light was changing and he could not stop and struck vehicle 1."

78. In addition, the responding police officers noted the following on the report:

   a. "traffic signal" as the traffic control device governing subject intersection (See, Box 3)
   b. "straight and grade" as the characteristics of the roadway at the area of the accident (See, Box 5)
   c. "dry" as the roadway surface condition at the area of the accident (See, Box 6)
   d. "clear" as the weather conditions then and there existing at the time (See, Box 7)
   e. "following too closely" was the apparent contributing factor against WOODHAM emphasis added (See, Box 21)

      f.  The police officer did not make any findings against ASTORGA in causing the collision.

79.    Attached hereto as **Exhibit F**, is a copy of the police blotter which corresponds with the police accident report.

## CONCLUSION

80.    WOODHAM unequivocally testified (*See*, **Exhibit E**) the front of defendants' truck came into contact with the rear-end portion of ASTORGA's vehicle under his clear observation prior to the time of impact. WOODHAM observed the rear brake lights activated on Plaintiff's vehicle before the crash a clear indication that ASTORGA was either slowing down or stopped prior to the accident; and further, WOODHAM saw the red traffic light ahead at the intersection of Route 303 and East Erie Street prior to the impact, but was unable to stop his truck prior to the rear-end collision. WOODHAM admitted there was a "heavy", and "stop-and-go traffic situtation" on northbound Route 303 before reaching the intersection of East Erie Street. ASTORGA's testimony confirmed she was at a full stop for 10 seconds at the red traffic light when she was struck in the rear by the front of defendants' truck. Notwithstanding all of this, WOODHAM continued to accelerate his truck as he approached the intersection, and was moving at the time he crashed into ASTORGA's stopped vehicle—all the while being aware that Plaintiff's brake lights were activated, that he was approaching a red traffic light and that he was approaching an area with a "heavy" "stop-and-go traffic situation".

81.    There was ample time for WOODHAM to bring his truck to a stop in order to avoid the collision; however, he was unable to come to a stop as a result of his inability to maintain a safe distance between Plaintiff's vehicle, traveling at an excessive rate of speed for the circumstances then and there existing and did not observe the roadway conditions immediately ahead of him at the location of the accident.

82.     It cannot be disputed that WOODHAM's failure to maintain a safe driving distance and travel at a sufficiently safe speed given the conditions on the roadway then and there existing, *to wit*, Plaintiff's stopped vehicle (rear brake lights activated), red traffic light at the intersection of northbound Route 303 and East Erie Street, construction work on the center median that closed the left lane of northbound traffic on Route 303 and "heavy" and "stop-and-go traffic situation" as he neared the intersection of Route 303 and East Erie Street, that was the sole proximate cause of this rear-end collision. WOODHAM testified he observed Plaintiff's vehicle in front of him in the same lane of travel on northbound Route 303 for about a quarter mile before the accident, had seen Plaintiff's rear brake lights activated an indication that she was slowing down and/or stopped before the collision and that even though he saw the traffic light change to red at the upcoming intersection, he was still forced to slam on his brakes when he saw the Plaintiff's brake lights. Plaintiff provided testimony that her vehicle was at a complete stop on the roadway for 10 seconds when she was struck in the rear by defendants' truck.

83.     The unrebutted evidence demonstrates defendants, in approaching and hitting Plaintiff's vehicle in the rear, did not maintain the reasonable distance mandated by New York Vehicle and Traffic Law §1129(a)[1]. Defendants must come forward with some evidence to rebut the inference of their own negligence created by the rear end collision to demonstrate that Plaintiff contributed to the accident.

84.     Defendants are unable to put forth a non-negligent explanation for their actions. Based on the circumstances of this case, WOODHAM was unable to stop his truck to avoid the collision because he was not adhering to proper or reasonable driver conduct given the traffic and

---

[1] New York Vehicle and Traffic Law §1129(a) provides: "The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and product, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."

roadway conditions. His inability to stop and avoid the collision was not a result of Plaintiff's conduct, but a result of his own negligence as set forth above. Thus, ASTORGA cannot be found to have been at fault.

85.     Here, no explanation is given to justify the cause of this rear-end collision accident, but viewing the facts of this case in the light most favorable to defendants, and according every benefit of every reasonable inference to be drawn from the evidence, there is simply no valid line of reasoning which could possibly lead a rational finder of fact to find any negligence or contribution to the cause of the collision on the part of Plaintiff. In the absence of an adequate, non-negligent explanation on his part, ASTORGA cannot be found to have been at fault. It is clear the defendants were solely responsible for the accident that caused Plaintiff's severe injuries. A fair reading of Plaintiff's deposition testimony, coupled with the admissions by WOODHAM in his deposition testimony, warrants the relief requested herein. The facts overwhelmingly indicate that there is no triable issue on the subject of liability.

Dated: New York, New York
       December 13, 2017

_____
EDWARD A. STEINBERG, ESQ.
LEAV & STEINBERG, LLP