Edward A. Steinberg, Esq.
LEAV & STEINBERG, LLP
75 Broad Street, Suite 1601
New York, New York 10004
Tel. No.: (212) 766-5222
Fax No.: (212) 693-2377
Email: eas@lstriallaw.com

*Attorneys for Plaintiff-* SONJI M. ASTORGA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
SONJI M. ASTORGA,

                  DOCKET No.: 16-cv-5068

            Plaintiff,

    -against-                                **MEMORANDUM OF LAW
                                            IN FURTHER SUPPORT
ALLSTATE OIL RECOVERY, CO. and          OF PLAINTIFF'S
RICHARD J. WOODHAM,                         MOTION**

            Defendants.
---------------------------------------------------------------------------X

TO THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE:

### **PRELIMINARY STATEMENT.**

1.    This Memorandum of Law is submitted in reply to defendants ALLSTATE OIL RECOVERY, CO. and RICHARD J. WOODHAM (WOODHAM) Affirmation in Opposition served on January 29, 2018; and in further support of plaintiff's SONJI M. ASTORGA (ASTORGA and/or Plaintiff) application for an Order, pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting Plaintiff partial summary judgment on the issue of liability as against defendants ALLSTATE OIL RECOVERY, CO. and WOODHAM, and setting this matter on the Trial Calendar for a trial on the issue of damages only, together with such other and further relief as the Court deems just and proper.

## THE ARGUMENT AS TO WHETHER PLAINTIFF'S VEHICLE WAS AT A COMPLETE STOP, OR WAS IN THE PROCESS OF SLOWING DOWN TO A STOP AT THE TIME OF THE OCCURRENCE, IS OF NO LEGAL SIGNIFICANT AND DOES NOT CONSTITUTE A NON-NEGLIGENT EXPLANATION FOR THE HAPPENING OF THE ACCIDENT.

2. Defendants are seeking to create an issue of fact where none exist. The apparent "factual issue" as to whether ASTORGA's vehicle was at a complete stop or was in the process of slowing down to a stop on Route 303 is merely a red herring by the defense. Affording every favorable inference to Defendants, *to wit* that Plaintiff's vehicle was slowing down to a stop at the red traffic light at the intersection, this does not raise an issue of fact sufficient to warrant denial of the instant motion.

3. It is hornbook law that "a rear-end collision with a stopped <u>or stopping vehicle</u> creates a *prima facie* case of negligence with respect to the operator of the moving vehicle and imposes a duty on the operator of the moving vehicle to come forward with an adequate non-negligent explanation for the accident (emphasis added)." <u>Ramirez v. Konstanzer</u>, 61 A.D.3d 837, 878 N.Y.S.2d 381 (2nd Dept., 2009)

4. It is established that "this general principle is most often expressed in cases where the lead vehicle was stopped or was in the process of slowing down to a stop, and the courts re-phrase this general principal in terms of said specific fact pattern by stating that a rear-end collision with a stopped or stopping vehicle establishes a prima facie case of liability with respect to the driver of the rear most vehicle, absent a non-negligent explanation... In any event, whether plaintiff's vehicle was in motion and not stopped or stationary or stopping is irrelevant and, contrary to the contention of the defendants' counsel, does not raise an issue of fact.)" <u>Leguen v. The City of New York</u>, 30 Misc.3d 1235 (A), 927 N.Y.S.2d 817 (Sup. Ct., Queens Cty., 2011; J. Kerrigan)

5.  *Consider also*, Schmertzler v. Lease Plan U.S.A., Inc., 137 A.D.3d 1101, 27 N.Y.S.3d 648 (2nd Dept., 2016) ("…the plaintiff established her prima facie entitlement to judgment as a matter of law by submitting her affidavit, which demonstrated that her vehicle was slowing down for traffic in front of it when it was struck in the rear by the defendants' vehicle."); Billis v. Tunjian, 120 A.D.3d 1168, 992 N.Y.S.2d 319 (2nd Dept., 2014) ("The plaintiff's contention that Terry Phillip's deposition testimony that he had stopped prior to the impact differed from his statement to the police that he had been slowing down for a yellow light at the time of the impact is immaterial to the issue of Terry Phillip's comparative fault."); Dattilo v. Best Transp. Inc., 79 A.D.3d 432, 913 N.Y.S.2d 163 (1st Dept., 2010) (a rear end collision with a vehicle that is slowing down establishes a prima facie case of negligence on the part of the driver of the rear vehicle); Ortiz v. Haidar, 68 A.D.3d 953, 892 N.Y.S.2d 122 (2nd Dept., 2009) (trial court decision reversed where vehicle was decelerating his vehicle and moving in traffic, when his vehicle was struck in the rear); Somers v. Condlin, 39 A.D.3d 289, 833 N.Y.S.2d 83 (1st Dept., 2007) ("…the evidence demonstrated that defendant hit plaintiff from behind while plaintiff was stopped, or very nearly stopped, on the roadway during stop-and-go traffic.") and Neidereger v. Misuraca, 27 A.D.3d 537, 811 N.Y.S.2d 758 (2nd Dept., 2006) ("In the instant case, the vehicle operated by Roessler was stopped or, at a minimum, very close to a complete stop, when it was hit in the rear by a vehicle operated by the defendant Salvatore Misuraca. Misuraca's statement that Roessler's stop 'was pretty sudden from what I saw' was insufficient to raise a triable issue of fact. Thus, the Supreme Court correctly granted Roessler's motion for summary judgment dismissing the complaint insofar as asserted against him.").

6.  *See further*, Reed v. New York City Transit Authority, 299 A.D.2d 330, 749 N.Y.S.2d 91 (2nd Dept., 2002) ("The appellants made a prima facie showing that the NYCTA

and its bus driver were solely at fault. Although there was conflicting evidence as to whether Koenigsburg's automobile had come to a complete stop behind Grogan's truck or was 'moving slightly,' there is no dispute that their vehicles were at least 10 feet apart when the bus rear-ended Koenigsburg's automobile and forced it into the rear of Grogan's truck…The respondents contend that the evidence showed that the appellants' vehicles abruptly slowed or stopped in the lane in front of the bus. However, since drivers are under a duty to maintain a safe distance between their vehicles and the vehicles in front of them…this claim is insufficient to raise a triable issue of fact as to whether the appellants were negligent, and if so, whether that negligence was a proximate cause of the accident.") and Martinez v. Mendon Leasing Corp., 295 A.D.2d 408, 744 N.Y.S.2d 44 (2nd Dept., 2002) ("As a general rule, a rear end collision with a stopped or stopping vehicle creates a prima facie case of liability with respect to the operator of the rear most vehicle, imposing a duty of explanation on that operator to excuse the collision. (emphasis added)")

### THE ARGUMENT AS TO THE MEANING OF ASTORGA'S ENGAGED BRAKE LIGHTS (WHETHER THIS CONCLUSIVELY SHOWS ASTORGA WAS STOPPED OR IN THE PROCESS OF SLOWING AND/OR STOPPING ON THE ROADWAY AT THE TIME OF THE OCCURRENCE), IS OF NO LEGAL SIGNIFICANT AND DOES NOT CONSTITUTE A NON-NEGLIGENT EXPLANATION FOR THE HAPPENING OF THE ACCIDENT.

7. Both parties concede ASTROGA's brake lights were engaged at the time of the crash, whether this conclusively shows that ASTORGA'S vehicle was at a complete stop or in the process of slowing down at the time of the rear end impact, does not create a material issue of fact or provide WOODHAM with a non-negligent explanation for the happening of the accident. *See*, argument and case law cited above.

8. In fact, the Second Department in Corbly v. Butler, 226 A.D.2d 418, 641 N.Y.S.2d 71 (2nd Dept., 1996) addressed the exact same argument put forth by the defense in

opposition to the instant summary judgment. The <u>Corbly</u> Court held: "[The rear-ending driver], Corbly, who could not recall whether or not there were any vehicles in front of the vehicle of Chien Hua Yang, averred that he observed the brake lights of Yang's vehicle some five to ten seconds before he skidded into the rear end of Chien Hua Yang's stopped car. Under such circumstances, Corbly's conclusory assertion that Chien Hua Yang stopped suddenly and unexpectedly is insufficient to satisfy his duty of explanation."

9. Numerous cases are in accord and have concluded that regardless of whether the rear-end driver recalls seeing the lead driver's brake lights engaged at the time of the accident, that same does not raise a triable issue of fact sufficient to warrant denial of summary judgment. <u>Schmertzler v. Lease Plan U.S.A., Inc.</u>, 137 A.D.3d 1101, 27 N.Y.S.3d 648 (2nd Dept., 2016) ("In opposition, the defendants failed to raise a triable issue of fact. The defendant driver's allegation that he did not recall seeing brake lights on the plaintiff's vehicle before the collision did not adequately rebut the inference of negligence."); <u>Santana v. Tic-Tak Limo Corp.</u>, 106 A.D.3d 572, 966 N.Y.S.2d 30 (1st Dept., 2013) ("Defendant driver's testimony that plaintiff 'stopped short' and that he could not see her brake lights is insufficient to rebut the presumption of negligence."); <u>Balducci v. Velasquez</u>, 92 A.D.3d 626, 938 N.Y.S.2d 178 (2nd Dept., 2012) ("…[defendants] merely relied on the contention that in relation to their respective accidents with the injured plaintiff, they did not recall seeing brake lights or any other illumination on his vehicle before the collisions. These submissions were insufficient to raise a triable issue of fact."); <u>Cortes v. Whelan</u>, 83 A.D.3d 763, 922 N.Y.S.2d 419 (2nd Dept., 2011) ("The defendant's allegation that he did not recall seeing brake lights or any other illumination on the plaintiff's vehicle before the collision did not adequately rebut the inference of negligence."); <u>Macauley v. Elrac, Inc.</u>, 6 A.D.3d 584, 775 N.Y.S.2d 78 (2nd Dept., 2004) ("DePaolo's

testimony that she did not recall seeing brake lights or tail lights illuminated on the plaintiff's vehicle before the collision did not adequately rebut the inference of negligence.") and Barile v. Lazzarini, 222 A.D.2d 635, 635 N.Y.S.2d 694 (2nd Dept., 1995) ("Under the circumstances of this case, Lazzarini's statement that he did not observe any signal lights or hand signals, indicating that the truck was stopped, is insufficient to establish a genuine issue of material fact precluding summary judgment. Whether or not the truck was stopped at the end of the exit or was attempting to merge into the traffic on the service road, Lazzarini's testimony that he saw the truck about 54 feet in front of him, and his inability to reduce his speed and bring his vehicle to a stop to avoid hitting the truck, establishes that Lazzarini was traveling at a speed that was excessive for an exit ramp merging into a service road.")

### WOODHAM'S "STATEMENT" AS CONTAINED IN THE POLICE ACCIDENT REPORT IS HEARSAY AND INADMISSIBLE ON THE INSTANT MOTION.

10.     Here, the sole fact which supports defendants' attorney's claim that ASTORGA's vehicle "stopped suddenly" at the intersection, is the hearsay statement attributable to WOODHAM on the police accident report. It is crucial to note, WOODHAM himself given the opportunity to testify for over an hour at his deposition, never once characterized ASTORGA's stop at the red traffic light as "sudden", "abrupt" or "unexpected." When asked to repeat what he told the responding police officers as to how the accident happened, WOODHAM testified: "I told them that I was driving down slow, stopped for the intersection and the vehicle in front of me also stopped, and I didn't have enough time to stop before impact." (pg. 52, lns. 5-8) Gomez v. Sammy's Transport, Inc., 19 A.D.3d 544, 798 N.Y.S.2d 84 (2nd Dept., 2005) ("In opposition, the defendants failed to raise a triable issue of fact. The defendants interposed only an affirmation of their attorney who lacked knowledge of the facts. The attorney's reliance on hearsay in the police report was insufficient to raise an issue of fact.")

11. A police accident report made by a police officer who was not an eyewitness containing hearsay statements of defendant is not admissible under the business record exception to the hearsay rule because said defendant is under no business duty to make such statements. Casey v. Tierno, 127 A.D.2d 727, 512 N.Y.S.2d 123 (2nd Dept., 1987)

12. Where the defendant's statement, as contained on the police accident report, is self-serving and made simply to shift responsibility to another person for the happening of the crash, Courts have repeatedly held that such statement is inadmissible hearsay. Fay v. Vargas, 67 A.D.3d 568, 888 N.Y.S.2d 405 (1st Dept., 2009) ("The police accident report was inadmissible because it was made by an officer who did not witness the accident and it contains the hearsay, and presumably self-serving, statements of plaintiff's decedent as to the ultimate issue of fact."); Noakes v. Rosa, 54 A.D.3d 317, 862 N.Y.S.2d 573 (2nd Dept., 2008) ("It was also error to admit the statement in the report allegedly made by the defendant that the plaintiff's car backed into her car. This was a self-serving statement that did not fall within a hearsay exception.") and Hoffman v. Eastern Long Island Transp. Enterprise, Inc., 266 A.D.2d 509, 698 N.Y.S.2d 552 (2nd Dept., 1999) ("Furthermore, the self-serving hearsay statements contained in the police accident report were properly not considered in opposition to the motion for summary judgment.").

13. Where the statement sought to be introduced through the police accident report, pertains to a driver's claim the rear-end collision was caused by the front driver's sudden, abrupt stop of his/her vehicle on the roadway, the Courts have rejected same as being insufficient to raise an issue of fact or show a non-negligent excuse for the happening of the crash. Brown v. Smalls, 104 A.D.3d 459, 961 N.Y.S.2d 104 (1st Dept., 2013) ("Plaintiff's attempt to provide a nonnegligent explanation for the rear impact, which contradicts the sworn statement of his

driver, was insufficient. To the extent plaintiff relies upon his driver's statement, as recounted in a police accident report, that Doumbouya's car stopped suddenly, the sworn report is inadmissible hearsay, and in any event, is not sufficient to defeat the motion."); Chang v. Rodriguez, 57 A.D.3d 295, 869 N.Y.S.2d 427 (1st Dept., 2008) ("It is undisputed that plaintiffs' were in the front vehicle when the middle vehicle, owned by Alamo and operated by Lee, struck plaintiffs' vehicle in the rear after having been struck in the rear by the third car, driven by defendant Rodriguez. In a chain-reaction collision, as here, responsibility presumptively rests with the rearmost driver, Rodriguez. The police accident report includes a statement apparently made by defendant Rodriguez. This statement, which is the sole support for plaintiffs' contention that they raised a triable issue as to Lee's negligence, is hearsay when offered against defendants Alamo and Lee by plaintiffs, and thus was insufficient to defeat the summary judgment motion."); Ganpat v. Warren, 5 Misc.3d 132(A), 799 N.Y.S.2d 160 (Appellate Term, New York, First Dept., 2004) ("Insufficient in this regard was the claimed discrepancy in the parties' deposition testimony concerning the precise distance between the O'Gorman and Bandham vehicles or the isolated hearsay testimony in the MV-104 accident report that the O'Gorman vehicle was 'slowing down for traffic' at the time of the collision.") and Rue v. Stokes, 191 A.D.2d 245, 594 N.Y.S.2d 749 (1st Dept., 1993) ("Gaines' only opposition consisted of the MV-104 filed by Stokes in which he stated that Serpico 'stopped for no reason (no cars in front of him). I hit my brake and tapped his rear end.' In considering the summary judgment motion, the IAS court implicitly accepted Stokes' accident report and the statements therein as evidentiary proof in admissible form and denied the motion 'because of a disputed issue of fact concerning Serpico's operation of the vehicle.'…The court's reliance on the contents of Stokes' MV-104 to find an issue of fact was clear error…Compelled to lay bare their

proofs, Gaines and plaintiff submitted only their attorneys' affirmations, of no probative value, and Stokes' unsworn self-serving MV-104 accident report, which is hearsay and insufficient, as a matter of law, to raise a triable factual issue.").

**THE ALLEGATION THAT PLAINTIFF'S VEHICLE CAME TO AN ABRUPT STOP ON ROUTE 303 AT OR NEAR ITS INTERSECTION WITH EAST ERIE STREET AT A RED TRAFFIC LIGHT AT THE TIME OF THE OCCURRENCE DOES NOT CONSTITUTE A NON-NEGLIGENT EXPLANATION FOR THE HAPPENING OF THE ACCIDENT.**

14. Assuming *arguendo*, that WOODHAM's hearsay statement as contained in the police accident report is considered on the instant motion, the contention that ASTORGA's "suddenly stopped" on the roadway is insufficient to raise a triable issue of fact, since WOODHAM was under an obligation to maintain a safe distance and safe speed while approaching both ASTORGA's vehicle from behind and the red traffic light at the intersection.

15. Numerous cases are in accord and conclude that allegations of a sudden and unexpected stop are insufficient to rebut the inference of negligence created by the unexplained rear end collision: Ramos v. Baig, 145 A.D.3d 696, 43 N.Y.S.3d 110 (2nd Dept., 2016) ("Begonia's contention that the third-party defendants' vehicle came to a sudden stop was conclusory and insufficient, in and of itself, to provide a nonnegligent explanation for the rear end collision."); Brothers v. Bartling, 130 A.D.3d 554, 13 N.Y.S.3d 202 (2nd Dept., 2015) ("Here, Price and Gill established their prima facie entitlement to judgment as a matter of law through the deposition testimony of Gill and the plaintiffs, which demonstrated that traffic was moving slowly, and Gill's vehicle was merging onto the parkway when it was struck in the rear by the vehicle operated by Roux. In opposition to this prima facie showing, Bartling and Roux failed to raise a triable issue of fact as to whether any negligence on the part of Gill contributed to the accident. Roux's assertion that it was the sudden stop of Gill's vehicle which caused the

accident was insufficient, in and of itself, to raise a triable issue of fact as to whether there was a nonnegligent explanation for the rear end collision."); Le Grand v. Silberstein, 123 A.D.3d 773, 999 N.Y.S.2d 96 (2nd Dept., 2014) ("Under the circumstances, Silberstein's averments that his vehicle was "positioned behind a line of traffic," and that Guillet's vehicle came to a sudden stop while in heavy traffic, were insufficient to raise a triable issue of fact as to whether there was a nonnegligent explanation for the rear-end collision."); Cajas-Romero v. Ward, 106 A.D.3d 850, 965 N.Y.S.2d 559 (2nd Dept., 2013) ("Although the defendant's version of the events leading to the subject rear-end collision differed from the plaintiffs' version of events, the defendant's version of events, even if accepted as true, did not raise a triable issue of fact as to the existence of a nonnegligent explanation for the rear-end collision. The fact that the defendant was traveling extremely close behind the plaintiffs' vehicle without leaving a reasonable distance created the possibility that a sudden stop would be necessary, and, by his own admission, the defendant clearly breached his duty to maintain a reasonably safe distance from the plaintiffs' vehicle, which he was following."); Hearn v. Manzolillo, 103 A.D.3d 689, 959 N.Y.S.2d 531 (2nd Dept., 2013) ("In opposition, the plaintiff relied on her own deposition testimony and that of the defendant driver that the appellant Alvarado stopped suddenly. A claim of a sudden stop by the leading vehicle, standing alone, is insufficient to rebut the presumption of negligence. Thus, even fully crediting the plaintiff's version of the accident, she failed to raise a triable issue of fact as to whether the appellants were negligent, and, if so, whether that negligence was a proximate cause of the accident.") and Mallen v. Su, 67 A.D.3d 974, 890 N.Y.S.2d 79 (2nd Dept., 2009) ("Under the circumstances, the assertion that the defendants' vehicle came to a sudden stop was insufficient to rebut the inference of negligence created by the rear-end collision.")

16.     *See further*, Zdenek v. Safety Consultants, Inc., 63 A.D.3d 918, 883 N.Y.S.2d 57 (2nd Dept., 2009) ("Although the plaintiff claims that the defendants' van came to a sudden stop, his testimony that he was five to six car lengths behind the van when the stop occurred, but was nevertheless unable to safely stop his motorcycle behind the van, indicates that he was traveling at an excessive rate of speed for an entrance ramp merging onto an expressway."); Ramirez v. Konstanzer, 61 A.D.3d 837, 878 N.Y.S.2d 381 (2nd Dept., 2009) ("Thus, defendant's contention, made in opposition to the plaintiffs' motion, that the plaintiff proceeded once the traffic light turned green but then suddenly stopped, did not rebut the inference of negligence by providing a non-negligent explanation for the collision."); Jumandeo v. Franks, 56 A.D.3d 614, 867 N.Y.S.2d 541 (2nd Dept., 2008) ("The defendant's contention in opposition, that she was traveling at 15-20 miles per hour approximately two car lengths behind the plaintiff, when the plaintiff suddenly stopped, did not rebut the inference of negligence by providing a non-negligent explanation for the collision."); Arias v. Rosario, 52 A.D.3d 551, 860 N.Y.S.168 (2nd Dept., 2008) ("Although both Danny Rosario and the plaintiff claimed in opposition to the motion that the Corona vehicle suddenly decreased its speed or stopped without warning, Danny Rosario was aware that there was a smoke condition in front of the Corona vehicle, and his deposition testimony indicates that he was following the Corona vehicle more closely than was reasonable."); Hakakian v. McCabe, 38 A.D.3d 493, 833 N.Y.S.2d 106 (2nd Dept., 2007) (Here, the plaintiff sustained his burden of establishing a prima facie case of negligence by submitting an affidavit in which he averred that he came to a complete stop at a yellow traffic light and that his automobile was then struck in the rear by the defendants' vehicle. In opposition, the defendants' explanation that the plaintiff came to a sudden and unanticipated stop, in and of itself was insufficient to raise a triable issue of fact."); Neidereger v. Misuraca, 27 A.D.3d 537, 811

N.Y.S.2d 758 (2nd Dept., 2006) ("In the instant case, the vehicle operated by Roessler was stopped or, at a minimum, very close to a complete stop, when it was hit in the rear by a vehicle operated by the defendant Salvatore Misuraca. Misuraca's statement that Roessler's stop 'was pretty sudden from what I saw' was insufficient to raise a triable issue of fact.") and <u>DiPaola v. Scherpich</u>, 239 A.D.2d 459, 657 N.Y.S.2d 883 (2nd Dept., 1997) ("The deposition testimony of the parties conclusively established that DiPaola's vehicle was struck in the rear when she stopped in the intersection to yield to an ambulance displaying emergency lights. Under the circumstances, the inference of negligence arising from the rear end collision was not rebutted by the allegation that DiPaola stopped suddenly.")

### DEFENDANTS' CASES ARE EASILY DISTINGUISHABLE FROM THE FACTS AT BAR.

17. Defendants' rely on <u>Power v. Hupart</u>, 260 A.D.2d 458, 688 N.Y.S.2d 194 (2nd Dept., 1999) in support of their affirmation; however, this decision favors ASTORGA. In <u>Power</u>, *supra*, after a review of all the facts, the Court held: "Here, the defendants argue that a question of fact exists as to whether the plaintiff made a sudden stop. However, at their examinations before trial, neither the plaintiff nor the defendant Bret Hupart testified that the plaintiff came to a sudden stop, nor is it reasonable to draw such an inference from their testimony. Thus, as the defendants failed, inter alia, to offer competent and probative evidence of such a sudden stop, the plaintiff was properly awarded partial summary judgment on the issue of liability." Here too, defendants failed to put forth any facts in admissible form that ASTORGA brought her vehicle to a "sudden", "abrupt" or "unexpected" stop on the roadway. There is no claim that ASTORGA's vehicle cut in front of WOODHAM. There is no claim that ASTORGA's vehicle changed lanes into WOODHAM's path of travel on the roadway. There is no claim that ASTROGA's vehicle stopped in the middle of the roadway for no reason

whatsoever where it was expected vehicles would be moving with the flow of traffic. The opposite is true. WOODHAM, given the opportunity to testify at his deposition, said he observed ASTORGA's vehicle in front of him either stopped or slowing down for the changing traffic light governing the intersection.

18. Defendants' rely on Filippazzo v. Santiago, 277 A.D.2d 419, 716 N.Y.S.2d 710 (2nd Dept., 2000) in support of their affirmation; however, this decision favors ASTORGA. The Filippazzo Court held: "The defendant failed to come forward with a nonnegligent explanation for the accident. The defendant claims that the brake lights on the plaintiff's vehicle were not functioning and that the plaintiff failed to use her turning signals. However, in light of the defendant's admission that she did not see the plaintiff's vehicle until she was only three car lengths away, she failed to raise a triable issue of fact that the malfunctioning brake lights and the plaintiff's failure to use her turning signals were a proximate cause of the accident."

19. Defendants' rely on Roberts v. Hall, 248 A.D.2d 845, 669 N.Y.S.2d 745 (3rd Dept., 1998) in support of their affirmation; however, this decision favors ASTORGA. The rear-ending driver in Roberts, *supra*, affirmed the driver of the lead vehicle abruptly stopped her car as she approached a yellow traffic light, thus causing or contributing to the accident. The Roberts Court held: "It is clear that the accident occurred after Paone's vehicle had come to a complete stop, creating a prima facie case of liability as to the driver of the vehicle which struck the Paone vehicle, and requiring said driver to rebut the inference of negligence created by the rear-end collision. Regardless of whether Paone stopped abruptly, Hall failed to operate his vehicle with due care, which included maintaining a safe distance from the vehicle in front of him... The deposition of Hall does not constitute such evidence, particularly inasmuch as he

admits having made a poor assumption that Paone was going to proceed through the traffic signal when it turned yellow."

20.    Defendants quote extensively from a 32-year old Court of Appeals decision of Lenahan v. Goucher, 65 N.Y.2d 1034, 494 N.Y.S.2d 293 (1985).  However, the opinion of the court simply states, "the jury's verdict reinstated for the reasons stated in the dissenting memorandum of Justice Paul J. Yesawich, Jr. at the Appellate Division." Reviewing the Third Department decision of Lenahan v. Goucher, 111 A.D.2d 546, 489 N.Y.S.2d 418 (3rd Dept., 1985) shows evidence was presented at trial that plaintiff was responsible for the collision because, after starting to pass the public works truck, she needlessly came to a sudden stop without warning and in the absence of any oncoming traffic.  The facts showed, the plaintiff in Lenahan admitted that westbound cars preceding her halted for the public works vehicle and then proceeded around it 'all in one motion because Lucas Avenue is not conductive to sneaking out and looking.  You commit yourself or you don't go.'"  The facts in this case are nothing like the facts in Lenahan, *supra*.  Although both ASTORGA and WOODHAM testified there was ongoing construction work near the center median of the roadway on the date of the accident, there is not a stitch of evidence that at the time of the rear end collision ASTORGA was passing any construction or construction vehicles on the roadway.  Both parties testified there were construction signs on the roadway that signaled all vehicles to move to a single lane, which was several feet behind the location of the accident, and which both parties safely traveled well before the crash.  There is no testimony from any of the parties that at the time WOODHAM slammed into the rear of ASTORGA's vehicle, ASTROGA was passing or changing lanes or maneuvering around any construction on the roadway.

21.     Defendants quote extensively from an 81-year old Court of Appeals decision of Zwilling v. Harrison, 269 N.Y. 461, 199 N.E. 761 (1936). In Zwilling, *supra*, the lead vehicle, without giving any signal, turned to his left into Varick Street and stopped short. There was a traffic sign that prohibited left turns into Varick Street. The Zwilling Court held: "This defendant was not bound to foresee the probability of traffic violation by the truck in front of her." The facts in this case are nothing like the facts in Zwilling, *supra*. There is absolutely no contention that ASTORGA violated a traffic rule. The opposite is true. ASTROGA was following the rules of the road by bringing her vehicle to a complete stop at the red traffic light.

22.     Defendants' reliance on Niemiec v. Jones, 237 A.D.2d 267, 654 N.Y.S.2d 163 (2nd Dept., 1997) is misplaced because the facts are clearly distinguishable from the facts of this case. The driver of the rear-ending vehicle in Niemiec, *supra*, testified at trial that he observed plaintiff's vehicle ahead. He stated that two vehicles on the roadway had already passed a school bus that was parked on the roadway discharging children, but that plaintiff's vehicle came to a sudden unexplained stop on the roadway resulting in the rear end collision. The claim in Niemiec, *supra*, was that the lead vehicle stopped suddenly for no reason, when it was reasonably expected that vehicles would be accelerating along the roadway. The Niemiec Court held: "Where a defendant contends that the vehicle in front of him came to an unexpected sudden stop, questions of fact are raised that should be submitted to the jury." Here WOODHAM can not claim ASTORGA's vehicle stopped for an "unexplained reason", since WOODHAM had a clear, unobstructed view of the roadway and saw the changing traffic light at the intersection going from yellow to red. ASTORGA's vehicle was at a stop at the red traffic light—WOODHAM should have reasonably expected that ASTORGA would stop her vehicle at the red traffic light at the intersection.

23.     The same is true for defendants' reliance on <u>DeCosmo v. Hulse</u>, 204 A.D.2d 953, 612 N.Y.S.2d 279 (3rd Dept., 1994)—a Third Department decision from 23-24 years ago.  The rear-end driver testified, at the time of the accident, defendant contended that after plaintiff's vehicle began to proceed and he therefore proceeded, plaintiff's vehicle came to a sudden and complete stop for no apparent reason, causing his vehicle to unavoidably roll into plaintiff's rear. Once again, here, WOODHAM knew that he was approaching a changing traffic light, and notwithstanding whether ASTORGA's vehicle was stopped or slowing down, WOODHAM had to bring his fully loaded truck to a stop for the red traffic light.  There was an expectation by WOODHAM that he would have to strop his truck at the red traffic light—nothing gave any indication that it was clear to accelerate through the intersection or that ASTORGA's stop was unexpected.

24.     The same is true for defendants' reliance on <u>Kienzle v. McLoughlin</u>, 202 A.D.2d 299, 610 N.Y.S.2d 771 (1st Dept., 1994)—a First Department decision from 23-24 years ago. The defendant, presented evidence at trial through his testimony, that the plaintiff's vehicle came to a sudden stop after being cut off by a third vehicle.  The <u>Kienzle</u> Court held: "In this rear end collision case, the IAS Court properly denied plaintiffs' motions for a directed verdict and to set aside the verdict as against the weight of the evidence, as the jury was presented with widely divergent versions of the accident."  Here, unlike in <u>Kienzle</u>, *supra*, there is no claim that an unknown, third vehicle cut anyone off on the roadway and there is no sharp divide as to the facts or happening of this rear end collision.

25.     The same is true for defendants' reliance on <u>Marx v. Pross</u>, 197 A.D.2d 800, 603 N.Y.S.2d 84 (3rd Dept., 1993)—a Third Department decision from 24 years ago.  The rear-ending vehicle stated at trial that he observed defendants' vehicle suddenly and unexpectedly

stop or almost stop, which caused plaintiff to downshift, strike the left rear of defendants' vehicle and veer into the lanes of oncoming traffic, where plaintiff's vehicle was broadsided by another vehicle.  A non-party witness testified there was no one in front of defendants' vehicle to impede its ability to proceed ahead.  Here, unlike Marx, *supra*, ASTROGA brought her vehicle to a stop on the roadway because of the red traffic light governing the intersection—her stop was expected and reasonable.

26.     Defendants' cite Rosa v. Colonial Tr., 276 A.D.2d 781, 715 N.Y.S.2d 426 (2nd Dept., 2000 and Martin v. Pullafico, 272 A.D.2d 305, 707 N.Y.S.2d 891 (2nd Dept., 2000) in support of their arguments on the instant appeal.  However, a review of the opinion does not contain sufficient factual details in relation to the conduct of the front vehicle that lead the Court to conclude there were issues of fact as to whether the lead vehicle made a sudden, unexplained stop, thereby contributing to the accident.

## CONCLUSION.

Plaintiff SONJI M. ASTORGA made out a *prima facie* case of entitlement to summary judgment as a matter of law which defendants ALLSTATE OIL RECOVERY, CO. and RICHARD J. WOODHAM utterly failed to rebut.

Dated: New York, New York
         February 12, 2018

*Edward Steinberg* (FW)
Edward A. Steinberg, Esq.
LEAV & STEINBERG, LLP